**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRYAN JOSEPH SNYDER,** | : | **Civil No. 1:21-CV-1973** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Bryan Snyder's case presents a striking example of both indolence and tenacity, as well as a graphic illustration of the principle that 85% of life is showing up. This is Snyder's third disability application, a testament to his tenacity in trying to secure disability benefits. However, this pursuit of benefits has been marked by indolence and a casual disregard for deadlines. Thus, in the course of these proceedings Snyder failed to timely request a hearing on his claim, and then failed on multiple occasions to show up for the hearing he belatedly requested.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

Snyder's highly problematic approach to the adjudication of this claim has led to a somewhat problematic ALJ decision, which contains some scrivener's errors and a rather cursory treatment of Snyder's emotional impairments. However, when considering this Social Security appeal, we are enjoined to apply a deferential standard of review to Social Security appeals, one which simply calls for a determination of whether substantial evidence supported the ALJ's decision. Mindful of the fact that, in this context, substantial evidence is a term of art which "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

### A. Procedural History and Defaults by Snyder

This is Bryan Snyder's third Social Security disability application. Snyder previously applied for benefits on December 16, 2010, and November 20, 2015. (Tr. 47). Those applications were denied on June 7, 2011, and November 6, 2017. (Id.) Ten days after the denial of his second application, on November 16, 2017, Snyder filed this third application for supplemental security income benefits (SSI). (Tr. 12).

While Snyder acted with alacrity in seeking these benefits following the denial of his two prior claims, his approach to the adjudication of this latest application was marked by a casual indifference to administrative deadlines and requirements. In his November 2017 application Snyder alleged that he was disabled due to depression, arthritis in his neck and back, and sciatica. (Tr. 279). This application was denied on March 28, 2018. (Tr. 46). On August 30, 2018, Snyder submitted an untimely request for a hearing. (Tr. 63). This request was denied, and on September 28, 2018, Snyder's case was dismissed. (Tr. 60-64).

Snyder then reapplied for benefits on October 10, 2018. (Tr. 65). Snyder's renewed application was scheduled for a hearing before an Administrative Law Judge (ALJ) on April 28, 2020, but at Snyder's request this hearing was postponed and rescheduled for September 15, 2020. (Tr. 153). Snyder failed to appear for the September 15 hearing, (Tr. 30-34), and the ALJ was compelled to reschedule the hearing once again.

Snyder's third hearing was scheduled for November 23, 2020. (Tr. 36-45). Once again Snyder failed to appear. (Id.) Snyder also failed to respond to a show cause notice sent to him following this hearing. In the absence of any appearance or communication from Snyder the ALJ went forward with this hearing on November 23, 2020, taking testimony from a vocation expert. (Id.)

3

## B. **Snyder's Medical History and Background**

Bryan Snyder was born in 1971 and was 46 years old on the date that he submitted this most recent disability application. (Tr. 23-24). He has a high school education and last worked in 2013 as a lumberyard laborer and pizza delivery man, but not at substantial gainful activity levels (Tr. 23, 259, 266). While Snyder largely declined to actively participate in the adjudicative process, a medical record was developed by the ALJ which provided a basis for informed decision-making with respect to this claim. (Tr. 1-1134). This record was noteworthy in several regards.

First, the medical expert consensus indicated that Snyder was not suffering from any disabling physical or emotional impairments during the relevant time frame from November 2017 forward. Quite the contrary, every expert who examined Snyder's physical and mental condition opined that he was capable of performing some work.  For example, on March 23, 2018, a state agency expert, Dr. David Fenner, D.O., opined based upon a review of Snyder's treatment records that he could perform light work notwithstanding his back impairments. (Tr. 46-58). Likewise, on March 9, 2019, a second state agency expert, Dr. Louis Bonita, also concluded that despite his physical impairments Snyder could perform light work. (Tr. 65-78). There were no countervailing medical opinions addressing Snyder's physical impairments and suggesting some greater degree of disability.

4

Likewise, the state agency experts who evaluated Snyder's mental state during the relevant time frame, Drs. Plowman and Turner, both agreed that Snyder's depression was not a severe impairment. (Tr. 46-58, 65-78). These conclusions were echoed by Dr. Jennifer Olivetti who performed a consultative examination of Snyder on February 24, 2018. (Tr. 762-68). At that time Dr. Olivetti described Snyder as "malodorous" but stated that his eye contact was appropriate, his speech was fluent, his thought processes were coherent and goal oriented, his affect was appropriate, he was fully oriented, his judgment and insight were good, his sensorium was clear, his cognitive functioning was average to above average, and his memory was intact. (Tr. 763-64). While Dr. Olivetti concluded that Snyder's attention and concentration were mildly impaired due to anxiety and nervousness in the evaluation, (Tr. 764), she found his depression was in full remission. (Tr. 765). Dr. Olivetti also expressly concluded that Snyder would experience no workplace limitations due to his mental state. (Tr. 766-68). There was no countervailing medical opinion regarding Snyder's emotional impairments. Thus, the medical consensus was that Snyder's depression was both non-severe, and non-disabling.

These medical opinions were buttressed and supported by Snyder's clinical history between 2017 and 2020. During these clinical encounters, Snyder described himself as a polysubstance drug abuser who had used marijuana, methamphetamine,

and other "pills" in the past. (Tr. 680, 771, 790). It also was undisputed that Snyder had a history of back pain stemming from surgery in 2003. (Tr. 428). However, with respect to his medical impairments, Snyder's clinical history during the pertinent time period was at most mixed and equivocal but contained substantial evidence indicating that he retained some functional capacity.

For example, in late October 2017, Snyder was seen after he complained of back pain, numbness, and weakness (Tr. 668). While it was reported that he ambulated with a cane there was no finding that an assistive device was medically necessary. (Tr. 670, 675). Moreover, upon examination Snyder had a full range of motion of his hip, normal light touch, and full 5/5 strength in his lower extremities. (Tr. 669-70, 683-84). A lumbar spine MRI reflected mild-moderate issues, and Snyder had received two sets of lumbar spine injections to alleviate his discomfort. (Tr. 677, 691, 720).

Snyder responded well to this treatment. By November 2017, he reported "100% improvement" from these injections (Tr. 694, 700). He reported tolerating "much more activity" and was interested in radiofrequency ablation, which was performed that same month (Tr. 703-04, 715-16). Snyder reported "much improvement in his back pain" with no gait problems, joint problems, myalgia, numbness, or weakness in December 2017. (Tr. 733).

6

Treatment notes also confirmed that Snyder engaged in strenuous activities, albeit in a fashion which occasionally exacerbated his symptoms. For example, in January of 2018 Snyder complained of back pain after reporting that he had run out of his house to break up a fight between dogs. (Tr. 754). According to Snyder he had "choked out" a pit bull in this encounter by putting a "sleeper hold" on the animal. (Tr. 790). Snyder was diagnosed with lumbar strain and referred to physical therapy but declined to attend.

Medical records throughout 2018 continued to document some back pain experienced by Snyder but were replete with reports that these back issues were not wholly disabling. Thus, in March of 2018 Snyder was seen and was found to have a negative straight leg raise, intact light touch, normal hip range of motion, and 5/5 strength in lower extremities. (Tr. 805-06). In April 2018, Snyder underwent a spinal cord stimulation trial, which he reported resulted in 65% relief and improvement in his activity tolerance, including being able to play with his nieces.  In June 2018 Snyder reported no acute distress, displayed a "sturdy and symmetric" gait, was able to walk heel-and-toe, had full muscle strength in his upper and lower extremities, and had a negative straight leg raise. (Tr. 922). He was also in no distress with no evidence of an assistive device and normal gait and strength in July, August, and September 2018. (Tr. 879, 910, 919).

In September 2018, his spinal cord stimulator was permanently implanted (Tr. 911). At his October 2018 follow-up, Snyder reported "improvement from the recent surgical procedure" and that he was "back to regular activities." (Tr. 907). Snyder's next full physical examination took place some thirteen months later in November 2019, where he had no gait issues, unsteadiness, joint pain, swelling, instability, or muscle pain. (Tr. 1085).

Snyder's treatment records during this time frame were similarly unremarkable in their description of his mental state. In fact, these treatment records consistently reported that Snyder displayed a normal mental status, including euthymic mood, appropriate affect, and normal attention, concentration, memory, fund of knowledge. (Tr. 656, 669, 683, 697, 709, 751, 775, 793, 799, 805, 814, 850, 857, 908, 910, 918, 922, 959, 968, 972, 1049, 1055).

Finally, while Snyder's repeated failures to attend his scheduled ALJ hearings limited the information which the ALJ possessed regarding his activities of daily living, in an adult function report submitted by the plaintiff Snyder reported that he performed light housework, helped with cooking preparing his own meals daily, could do housework without help or encouragement, could walk and ride in a car, went shopping weekly, and managed his personal finances. (Tr. 307-10). Snyder also reported a daily involvement in hobbies and weekly engagement in social activities.

(Tr. 311). He said he could lift ten pounds and walk several blocks without resting, and denied any impairments in memory, concentration, following instructions, or task completion. (Tr. 312).

It was on this medical record that Snyder's disability application came to be heard by the ALJ.

## C. **The ALJ's Decision**

After several continuances and failures to appear by Snyder, the ALJ conducted a hearing on November 23, 2020. (Tr. 36-45). Snyder failed to appear for this hearing, but the ALJ elicited testimony from a vocational expert at this proceeding. (Id.)

Following this hearing, on April 23, 2021, the ALJ issued a decision denying this application for benefits. (Tr. 9-24). In that decision, the ALJ first concluded that Snyder had not engaged in substantial gainful activity since the alleged date of the onset of his disability in November of 2017. (Tr. 14). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Snyder's generative disc disease of the thoracic spine and lumbar spine, failed back surgical syndrome, and chronic pain syndrome were all severe impairments (Id.) The ALJ concluded, however, based upon the uncontested medical opinion evidence that Snyder's depression was not a severe impairment, citing to the medical record. (Tr. 15-18).

9

At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 18-19).

Between Steps 3 and 4 the ALJ concluded that Snyder retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform no greater than light work as defined in 20 CFR 416.967(b). She[2] could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl.

(Tr. 19).

In reaching this RFC determination, the ALJ described Snyder's treatment history, including the absence of any mental health treatment during the pertinent time frame, noted the complete absence of treating source medical opinion supporting his physical disability claims, and cited the state agency medical consensus which found that he retained the mental capacity to do work. (Tr. 19-23).

Having reached these conclusions regarding the medical, clinical, and opinion evidence, the ALJ found that Snyder could perform jobs that existed in significant numbers in the national economy. (Tr. 23-4). Accordingly, the ALJ determined that

---

[2] The RFC assessment misgendered Snyder but it is clear from a reading of the decision as a whole that this was merely a non-material scrivener's error which did not affect the analysis of this claim in any way.

10

Snyder had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Snyder challenges the adequacy of the ALJ's decision, arguing that the ALJ erred in considering the effects of his severe and non-severe impairments and in fashioning a residual functional capacity (RFC) assessment which concluded that he could perform a limited range of light work. This appeal is fully briefed by the parties and is, therefore, ripe for resolution. As discussed in greater detail below, having considered the arguments of counsel, carefully reviewed the record, and remaining mindful of the deferential standard of review which applies here, we conclude that the ALJ's decision is supported by substantial evidence. Accordingly, we will affirm the decision of the Commissioner denying this claim.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  <u>See</u> 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the

12

agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

13

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

14

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could

15

function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

18

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See</u> <u>Titterington,</u> 174 F. App'x 6; <u>Cummings</u>, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns</u>, 312 F.3d 113; <u>see also</u> <u>Rathbun</u>, 2018 WL 1514383, at *6; <u>Metzger,</u> 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   Step 2 Analysis: Standard of Review

At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more

than a minimal effect on an individual's ability to work.' " <u>McCrea v. Comm'r of</u> <u>Soc. Sec.</u>, 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a *de minimis* screening device used to cast out meritless claims. <u>McCrea</u>, 370 F.3d at 360; <u>Newell</u> <u>v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. <u>Bowen</u>, 482 U.S. at 146, 107 S.Ct. 2287. However, an alleged error in characterizing an impairment as non-severe, standing alone does not compel a remand. Quite the contrary, it is well-settled that: "[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." <u>Naomi Rodriguez v. Berryhill</u>, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019) (citing cases). <u>See</u> <u>Stancavage v. Saul</u>, 469 F. Supp. 3d 311, 332 (M.D. Pa. 2020).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### D.    <u>The Decision of the ALJ Will Be Affirmed.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we

must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the ALJ's decision that Snyder was not entirely disabled.

At the outset, we find that the ALJ did not err in concluding, based upon the greater weight of the medical evidence, that Snyder had the physical ability to perform some light work. In this regard, like the ALJ, we note that Snyder's disability application was bereft of any credible medical opinion support for the proposition that he was totally disabled physically.

Further, the uncontradicted consensus among the state agency experts was that Snyder retained the physical ability to perform light work. The ALJ was entitled to rely upon this undisputed evidence in crafting a light work RFC for Snyder. Indeed, it is axiomatic that:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions

23

often deserve more weight than the opinions of doctors who review records, <u>see, e.g.</u>, 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," <u>Brown v. Astrue</u>, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well. <u>See</u> SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

<u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011).

We also agree that substantial evidence—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Biestek</u>, 139 S. Ct. at 1154—supported the ALJ's determination that Snyder's depression was not a severe impairment during the pertinent time period. As for Snyder's reported depression, there was a complete consensus of medical opinion evidence that found this condition was not severe. Moreover, clinical treatment notes consistently reported that Snyder displayed normal mood, affect, judgment, and behavior.[3]

At bottom, Snyder invites us to re-weigh the evidence and fashion a different RFC in this case. However, we are mindful that our " 'review of the ALJ's assessment of the [claimant]'s RFC is deferential,' and the 'RFC assessment will not

---

[3] Snyder also alleges that the ALJ erred in failing to fully consider his use of a cane but nothing in the administrative record suggests that this cane was prescribed or found to be medically necessary. Accordingly, the ALJ's treatment of this issue was sufficient.

be set aside if it is supported by substantial evidence.' " <u>Stancavage v. Saul</u>, 469

F. Supp. 3d 311, 339 (M.D. Pa. 2020). In the instant case, we find that the ALJ's

assessment of the evidence complied with the dictates of the law and was supported

by substantial evidence, a term of art which means less than a preponderance of the

evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not

mean a large or considerable amount of evidence, but rather such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487

U.S. at 565.

This is all that the law requires, and all that a claimant can demand in a

disability proceeding. Thus, notwithstanding the plaintiff's argument that this

evidence might have been viewed in a way which would have also supported a

different finding, we are obliged to affirm this ruling once we find that it is

"supported by substantial evidence, 'even [where] this court acting *de novo* might

have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d

1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d

808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that

applies to appeals of Social Security disability determinations, we find that

substantial evidence supported the ALJ's evaluation of this case.

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, IT IS ORDERED that the final decision of the

Commissioner denying this claim is AFFIRMED.

An appropriate order follows.

/s/ <u>*Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November  23, 2022